At this time, we'll hear Amato v. United States. Thank you. Good morning. Good morning, Your Honor. I'm David Schoen, representing Baldessari Amato on this appeal. May it please the Court. We're here on the certificate of appealability. It's limited to the ineffective assistance of counsel claims. I'd like to focus today on the conflict issues, issues surrounding the conflict. I'd like to start out by saying that all of the parties in this case agree, because it's indisputable, that prior to the decision in Mickens v. Taylor, this case would be a case of automatic reversal under Levy, under Rogers, under a whole host of authority, simply because of, even if it were, if I were to accept it were a potential conflict at the time, simply because of the district judge's failure to execute his inquiry duty. So there's no question about that. In papers filed below, the government conceded that. However, we have Mickens. There's an argument that we make in the papers that this should still come within the exception to the non-automatic reversal rule in Mickens, and that's where there's a protest by the, in the Mickens court, they carved out a narrow exception based on Holloway, that if there's a protest about the representation and the court fails to execute its inquiry duty, then it still could be automatic reversal. We make that argument. But I'd like to move into the. I don't understand. Who protested? The White, Mr. White, by saying he needed a hearing, that he was concerned about the obligations, even though he said it was waivable and it was a potential conflict. Quite frankly, as I intend to argue to you, he was mistaken when he said it was a potential conflict at that point. It was an actual conflict that adversely affected Mr. Amato from the start, from the day Mr. White entered this case, and I'll explain sort of exactly what I mean. He said his client was perfectly willing to waive. He said that, Your Honor, and what we know. And he also talked about the limited form of representation and the fact that he had very little recollection of the facts, and in terms of his ability to cross-examine the particular witness, the particular witness never even testified. Yes, Your Honor. So take those in order. First of all, this court has said, going as far back as Irizo, that we don't credit what that lawyer says. When he has his own financial interest and other interests, we don't credit what he says about whether he suffers under a conflict or not. We have to look independently at that. And as for his limited representation. No, it's not crediting. You're just relying on him by saying he said he wanted a hearing. He wanted a hearing. He knew that a hearing was necessary, but he tried to convince the court that he should stay in the case. The court never had that hearing, and that's the problem with not having these hearings, because this conflict plays out in incredible measure during the course of this thing. But I say it's an actual conflict with adverse effect from the start, because from the start, Mr. White had to develop a theory of the case. Messino, his prior client, was central to this case. The fact that he didn't testify in this case, first of all, doesn't matter as a matter of law. In Levy, one of the conflicts involved in the case was a prior representation of a client. That client never testified. Let me ask you this. If he had had, if Mr. Amato had had unconflicted, competent counsel from the get-go, what would that counsel have done differently than what happened here at trial? Very good, Your Honor.  This is where we list, you know, the adverse effects. But from the start, he would have to come up with a theory as to how to deal with Messino. Let me say this, just a preliminary point. There are two very good cases, one of the Eastern District, one from the Southern District, called Pizzonia and Iannotti, about the continuing duty that the lawyer has to his or her client from a prior representation, which they say is the same as concurrent representation. That's Judge Weinstein and Judge Scheinlin. And what they say is, you're barred, that attorney is barred, even from making an argument that would be against that client's interest. So in this case, let's say the highlight of this case has to do with the, of the conflict, rather, has to do with the DeFalco murder. So Vitale, the underboss of the Bonanno family, testified directly. Baldo Amato killed DeFalco, and I know that because Messino told me. Do you know it from any other source? No. Only because Messino told me it was true. Well, what Mr. White knew was that he was holding 302s from Vitale, on which Mr. Messino had written all lies. All before he cooperated, though, right? So I'm just trying to get at all before Messino cooperated. So the only way you're going to get those 302 statements in is if you call Messino, right? And then Messino might turn the tables and say, oh, yeah, I was lying then. That was before I was cooperating. He told me that for sure, in which case that's worse than not bringing it up at all, right? In some sense, yes, Your Honor. In the other sense, it highlights the conflict. No, no, no. I'm not asking about a conflict at this point. I'm asking about what a competent, unconflicted lawyer would have done differently than what Mr. White did here. And you keep coming back to the conflict. I'm coming back to competent, unconflicted counsel, seems to me, would have likely done the exact same thing that happened here, don't you think? Respectfully, I disagree, Your Honor. Why? The two concepts are inextricably intertwined because we know the test under Schwartz is Was there an alternative defense strategy that was inherently in conflict with the attorney's other interests? That doesn't have to be a reasonable strategy, we hear under Schwartz. It doesn't have to be a winning strategy. It could be a strategy that was likely to lose. But it was a strategy that was a plausible alternative here. And to prove that it wasn't, by the way, the government has to show that no attorney ever would have used that. It was plausible. Would you have called Messino? Yes, Your Honor. I would have, first of all, sought to interview Messino. But at this case Do you think he would have interviewed with you? I don't know the answer to that. I don't know the answer to that. You would have called him to the stand. White had a relationship. The chance is that he would turn the table. I would have had to judge based on the DeFalco evidence and the Perino evidence. Because what we knew was, remember, Mr. White tried to put in three witnesses who were going to undercut Vitale on the Perino evidence. But he messed up. He didn't give proper notice and so on. What he could have done instead, because at this case the evidence, let's say the government's position is the evidence is overwhelming, which, by the way, with a conflict, doesn't matter under U.S. v. Kirshen, C-U-R-S-H-E-N, or Cruz v. Lee. But let's say at this point the evidence was overwhelming as to the Perino murder. Mr. White had no choice. Because what he could have done, once those three witnesses were excluded, he could have put in Messino. Because what those witnesses had to say is that Messino told them that Vitale did the Perino murder on his own agenda, without authorization. And he, Messino, was very angry about that. And would have liked to have killed Vitale if he could have. So I would have put in Messino for that sort of thing. Because, remember, Messino was given this broad evidentiary scope, both because he was Mr. Amato's co-conspirator, as Judge Gariff has found. He was the boss of the family. Therefore, he came in under discussion of family business. He was his business partner. He was, again, tied to Mr. Amato from start to finish. There is no way that Mr. White even could have objectively evaluated this matter without regard to the conflict. And that's at the heart of it. Regardless of what another lawyer without the conflict. You seem to be arguing that an alternative strategy is an alternative strategy even if it's foolish and suicidal. It just has to be a plan of something you could do. But a strategy, by definition, is a series of tactics that are designed to accomplish what you want to accomplish. Judge, I don't believe this was suicidal in any regard. Remember, the government never put forward an affidavit for Messino that these were lies. There's no evidence that he was lying when he wrote those notes, the 302s. They had full access to Messino. There's no evidence whatsoever in the record that Messino would have turned on the government and would have gone this way. But that's an evaluation White could not make objectively. He didn't know going in. Is he going to go this way or that way? And either way, White was in a quandary. White could not have been the lawyer to make the decision in this case. That's the problem. And that's why this circuit has shown— White was also unaware of the document in which Mr. Messino had written all lies, right? It wasn't produced to him. No, that's not accurate, Your Honor. In fact, White stipulated not to use those documents. There is no justifiable reason for him to stipulate not to use Messino's notes that said Vitale was lying. There simply isn't. He didn't offer those notes? I thought they were excluded. White—there's a letter from White in this—I think it's document 770, something like that, in which White stipulates that he will not use Messino's notes. After he's learned that Messino's not going to testify, right, for the government. He's not going to be a government witness. Well, it's not certain yet until about May 22nd, I think, let's say the trial, just before the trial, that Messino isn't going to testify. But, yes, at the—well, first of all, White could have called Messino to testify and, as I say, should have. He had no other choice in this case. Is it common? Maybe I don't—I'm not in the Eastern District. Is it common to call cooperating witnesses in a defense case that you won't have a shot at prepping beforehand? No, Your Honor, it's not. And we're going to be hostile? No, Your Honor, it's not. But White had a relationship with Messino, and Messino and Vitale were at odds. No, no, I'm not asking about White. I'm asking about would a competent lawyer have done that. It seems to me unusual that a lawyer calls a cooperating witness to testify as part of the defense case when they don't have access to them. Unusual, yes, Your Honor. This man was facing a life sentence, and his other evidence was excluded. There was good faith reason to believe that Messino would support Amato's position in this case. It simply is. That's what the record shows. It's unusual to have 302s with the boss of the family saying that the underboss is lying completely and that this never happened. But this is often impeaching statements or impeaching material from first proffers where somebody is lying, right? And then that comes out if they testify. I think it's turned over as 3500 or Jiglia. I suppose the point is under Schwartz and all of those cases, we don't get to that inquiry, frankly, because of the conflict here. Because any decision by White, any evaluation by White was colored by the conflict irretrievably. One last thing I'd like to say is if the court were to consider Judge Garifuss' decision in the Messino case itself in 2003, it's absolutely irreconcilable. Same kind of conflict, a prior representation. The government wants to say, well, the defendant also believed Savitt, the disqualified lawyer, was still representing him. But Judge Garifuss discounted that. He said we could put another lawyer in so he's not still representing him. Judge Garifuss identified exactly the problems that we have in this case on page 263. That White could not have made a conflict-free evaluation of the case. That White would be barred from taking any position that would have impeached the man if he testified. That he would have been barred from making any argument against that former client's interests. And then in this case, no hearing. He held hearings for the other defendants in the case. The government in this case took the position White had to be disqualified. And that Messino did not waive his privilege. So if there were nothing there, why did the government take that position also? You've reserved three minutes for rebuttal. Yes, Your Honor. Thank you for your indulgence. Good morning. Good morning. May it please the Court. Andre Spector for the United States. Your Honors, I want to correct a few of the statements that we heard today and then reply. And just to pick up on one of the last few points. The idea that Mr. White stipulated to not using those statements on the 302, that's just not accurate. We point you to Government Appendix 109. That's a motion that White filed pre-trial. And he said he had reason to believe at that point that the government was going to put in Messino's statement as an out-of-court statement. And because the government was going to do that, Mr. White asked for an opportunity to impeach Messino using these notes that he made in the 302s. And Judge Garifuz precluded that. That's one example of how Mr. White tried everything he could to preclude the statement from coming in. When the statement did come in, he impeached Messino. He called him a liar, among other things. He said he's not to be trusted. And so it's not accurate to say that he somehow held back. I'm sorry. Which statement came in? I'm talking about the out-of-court statement that Messino made to Vitale. And Vitale is the one that testified in which Messino said that Amato killed DeFalco. That's the statement that . . . The same statement that he wrote those notes on? Yes. When he was preparing for his own trial, when Messino was preparing for his own trial, he was looking at the 302s where Vitale made that statement. And he wrote, as he was preparing for trial, all lies. Didn't say that. And so that's what Mr. White wanted to impeach Messino as declaring a trial. And Judge Garifuz precluded that. And I want to be clear. There was an error committed below, and it was an error caused by the government. Because we never asked for a hearing. And as a result, Judge Garifuz didn't hold a hearing. You reminded Judge Garifuz of the request, right? No, Judge. I think what happened, and I do want to correct this as well. You know, we get the impression from the papers as if the government and Mr. White were just demanding a hearing from Judge Garifuz, and he didn't want to have it. And that's not what happened. Mr. White, when he came on the case, he disclosed that he had a conflict. The government and Mr. White, along with Mr. Amato, appeared for a pretrial conference. There were 12 defendants. Mr. Amato was there. And that's when, towards the end of the conference, the government flags this issue and says that we don't know yet if Mr. Messino is going to waive his right to privilege with Mr. White. If Mr. Messino's attorney doesn't do that, then it's going to be our position that he should be disqualified, that Mr. White should be disqualified. And Judge Garifuz quite reasonably says, let's wait to see what Mr. Messino's lawyer does. And so the . . . That doesn't just turn on Messino's lawyer, right? If Messino's lawyer, White, is now representing Amato, then it matters whether they're both prepared to waive, right? I'm sorry. I was talking about Messino's then current lawyer. When we appeared for the conference, where the government flagged this issue, at this point, Mr. White is years removed from representing Amato. I'm sorry. At that point, he's removed from representing Mr. Messino. Mr. White has not represented Mr. Messino for years. Mr. Messino has a new lawyer. And Mr. Messino's new lawyer hadn't yet told the government whether Messino was waiving his privilege. Was Messino cooperating at that point? Yes, he was. It was in your hands whether he waived the privilege. I think as a practical matter, yes. All the government had to do was call the lawyer, talk to Messino, and ask him, are you waiving this right or not? Wouldn't his obligation to testify have come within the scope of the cooperation agreement, that he would testify whenever you wanted him to testify? That's absolutely right, Judge. That's absolutely right. And the government failed to update the court. And that is what happened. We never moved to absolutely disqualify Mr. White from representing Amato. That didn't happen. He might ask for a hearing, right? He said that he's prepared to have a hearing. But what he also said, he said he's prepared to have a hearing, that his client was prepared to waive the conflict at that hearing. He also added, and this is at Appendix 137, there is no serious potential conflict in my representing Amato and likely no potential conflict at all. So it's not the case that he was demanding . . . The conflict would have only arisen if you had complete control over this witness who was cooperating. He would have done and was obligated to do anything that you wanted him to do, including testify. That's right. That's right, Judge. And we should have updated the court on whether he was waiving his rights of privilege. You should have updated the court. Amato has to waive. Even if it's a potential conflict, Amato has to waive it. The fact that his lawyer is representing that he's prepared to do it doesn't absolve the court of having a hearing to determine whether he's doing this knowingly and voluntarily and understands what the heck's going on. That's right, Judge. There should have been a hearing. There should have been a hearing. I'm just trying to explain why this error occurred. It doesn't change the fact that there was an error. Right. I don't think it changes much of anything. So there is this error. So what Mr. Schoen is saying, that this error basically means that we've got to go back and start over, that we don't even get to prejudice. We're just talking now about the fact of this conflict, and it taints everything. So do you agree with that? Not after Mickens, Judge, and I agree that before Mickens it might have been different. What Mickens teaches us, it's not about the failure to have the inquiry. It's about whether there was an effect on the constitutional rights of the petitioner, and there wasn't. And I went through some of the examples of how Mr. White fought every part of the government's case, including Messino's out-of-court statement. The question is whether it affected his judgment, right? And so I now have Mr. Schoen saying that he would have called Messino. Now, some other lawyers may not have, but we don't know whether the decision not to do it by Mr. White was based on the fact that he had a conflict or based on the fact that he thought in his own judgment that this was not a good play. And isn't that a problem? Well, Judge, this is very similar to the decision in Eisman that we cite by the Second Circuit, where there was the same lawyer representing a son and a father who were accused of sodomizing a girl. And the same argument was made that when the son went to trial, a non-conflicted lawyer would have called the father, and the father would have given all these good statements. And there's just nothing to support that, as there is nothing to support that here. You know, Messino did testify in 2011 in the second Bassiano trial, and what he testified then was that Amato was a long-time soldier. And that's sort of the preview of what Messino would have said had he testified in this trial. But he didn't testify about the murder or Amato's role in murders, right? That's true. He was in charge of those. But it's a preview of what a cooperating witness, someone who is one of the most cooperating witnesses that the Eastern District has ever had, was going to say at this trial, and it was not going to be helpful to Mr. Amato, and there's no indication in the record that it would have been. You know, the other point I want to make is this idea that Messino's hearsay statement was essentially the whole ballgame when it came down to DeFalco murder. And in his brief, the appellant tries to dismiss the testimony of Tabita, Anthony Tabita, who was not an easy witness for the government. He had no incentive to testify. He was subpoenaed to testify. But he provided, you know, very critical evidence. He said that Amato had ordered him to kill DeFalco, and that, in fact, Tabita tried to do so on two different occasions. And what the appellant says in his reply brief, which I think is very misleading, is he says that we've taken a different position when we were here on direct appeal. And when we were here on direct appeal, we said that Tabita wasn't that helpful, that he was evasive and that his testimony was, you know, essentially useless. And that's not the case. First, I point to our estimation in this trial, the Amato trial. Point one in our estimation and the point that we spent the most amount of time in trying to prove to the jury that DeFalco was killed by Amato, was ordered to be killed by Amato, was the Tabita testimony. It wasn't the Mosino out-of-court statement. It was the Tabita testimony. And when you go to our direct appeal brief that the appellant quotes, the phrase that he omits, and this is what we said, Tabita testified truthfully, and that is our position. Tabita testified truthfully. He was important to this case, and he was the most important piece to this case. He had no conflict with Mr. White. Just one last point that I want to make on the hearing. The question for whether a hearing should have been held is obviously one of an abuse of discretion. And Judge Garifalos did not abuse his discretion in not holding a hearing here. He took the middle ground approach. He asked for a declaration from Mr. White. He expressed his... So your view is that a cursio hearing is optional? No, I'm sorry. I'm not talking about a cursio hearing. I'm talking about the hearing on the petition, on the habeas petition. Oh, I'm sorry. He wrote a 50-plus page opinion where he carefully went through all the material facts that could possibly be resolved in this hearing. He expressed his frustration that he had to pull all these allegations from dozens of filings or over a dozen filings from the petitioner, and he found no possible material fact. This is not a case where the trial judge was operating just on a cold record. He had firsthand knowledge, not just presiding over the habeas petition, but over the trial, over the related trials, seeing Mr. Messino testify. He saw Mr. White perform. He saw that Mr. White was defending Amado vigorously, that he pulled no punches. And given all his observations, given White's declaration, there's no abuse of discretion. His decision was not outside of the range of permissible ones that he could make under the circumstances. Unless Your Honor has any questions, I'll rest on our submission. Thank you. Thank you. Mr. Schoen. Could I ask you, Mr. Schoen, what would Judge Garifas have said at a Curcio hearing to your client about what the conflict was? He would have handled it exactly like you did, Your Honor, in the Perez case in 2003. He would have given the full panoply of explanations as to what could happen here. That Mr. White, because of his representation and continuing duties to Messino, would have a problem here. And here's what the problems would be. And he would explain all of these things that could arise in the case. He would also give him independent counsel. I'm sorry, Judge. No, I interrupted you. I'm sorry. That sounds like a concession that this is a potential conflict and therefore waivable. No, Your Honor, respectfully, not at all. What would be the point of a Curcio hearing just like Judge Corman had if it's an actual conflict? Because he still has to play out the Curcio hearing. Now, in Messino, to the judge's point, the court did find this exact kind of conflict to be unwaivable because of the risks and the dangers that happened. So in this case, we not only didn't have the inquiry duty, we had a conflict that Judge Garifas had found for Messino himself in 2003 in disqualifying Efrem Savit to be unwaivable. If I could just respond very briefly to the points that were made because I was sort of accused of not speaking accurately. Document 725. This is the stipulation I was referring to. Defendant Amato does not intend to refer to notes made by Joseph Messino on FBI 302 reports if Messino does not testify. And there were other ways for him to get it in. But he stipulated not to use those. And so I think I spoke accurately. On the hearing, what Mr. Andre said to the judge was unequivocal. It is the government's position that Mr. Messino, at A344, that Mr. Messino does not waive that issue, meaning privilege and his relationship with White, that Mr. White should be disqualified from the case based on your Honor's decision with respect to Messino when Mr. Savit was trying to be appointed as his lawyer. And it's quite unequivocal there. Now, evidentiary hearing. First of all, I mean, I deal with the Eisenman case. In Eisenman, Judge Newman wrote it was the most bizarre case he had seen. They didn't know it was purely speculative what the prior client could have testified to or would have testified to. Here we have Messino's notes on the 302. We have statements Messino made to Capa and Cantarella, other cooperating witnesses, memorialized in their 302s that Vitale did the Perino murder on his own, having nothing to do with Amato. That's serious stuff. But White, again, couldn't evaluate whether to call Messino. On the evidentiary hearing, this case is beyond the pale, with all due respect, on the failure to give an evidentiary hearing. As I said in the documents below, I interviewed White. I say this at page A537. White said to me, why should he have to give me an affidavit? He didn't need one in the Schwarz case when he won. Basically, why should he have to be his own executioner? You can't use a Chang affidavit in a case like this. That's reserved for a case in Chang, which even the court in Chang questioned. It's reserved for a single-issue case, whether the defendant wanted to testify, that sort of thing. All of these cases I cite, Razor, Chang, Mui, Quinones, all of these cases say in a case like this, it's factually intensive, you have to have an evidentiary hearing. And at that evidentiary hearing, we would explore with White all of the reasons. He said in his affidavit, ex parte to the government, I don't remember why I did this, I don't know why I did that, which frankly undercuts any strategy argument, which we often hear in these conflict cases. But I'm telling you what White, I told the court, what White said to me, why should he have to be his own executioner? Let's have the evidentiary hearing and get White under oath where we can ask him questions. This is a case that demands that at a minimum. Demands that now? Now, at a minimum. An evidentiary hearing. Absolutely, Your Honor. Since I don't remember what warnings I gave in 2003, the question that I asked you was if there had been a Curcio inquiry, what would the questions have been to outline for your client what the risks were going forward? Of course, as Your Honor is aware, more than just questions that the court would ask is an advice that the court would give. And the court would appoint independent counsel. And in this case, the court, at the point the court knew about the 302s, certainly, the court would have used that as a particular example and said to Mr. White, I'm sorry, said to Mr. Amato, Mr. Amato, listen, your lawyer represented Massino in this case. Massino may or may not be a witness in the case, but Massino is at the heart of this case. By the way, White on direct appeal said Massino was the most important aspect of this case, period. That's what his appellate brief says that I cite to. And so the judge would have explained to Mr. White, I'm sorry, to Mr. Amato, that these are the kinds of things that can come up in this case. White could be in a position where he has to, if he has to decide whether to call Massino, and if he called him, how can he impeach him? This is, again, what Judge Garifas was concerned about with Seven. He could impeach him on the basis of what he wrote himself, not on the basis of any confidential information that he had learned as a result of representing him. Potentially, but the danger is we don't know what he was borrowing from. We don't know what that privileged information was. And that's the risk that Judge Garifas found. What makes that document significant is what Massino wrote on it. And he would have, what would have prevented him, what conflict would have prevented him from asking Massino about it? Okay, let's say he asked Massino about it. Let's play it out. And Massino says, no, I was lying then. White's goal is to show Massino was telling the truth when he said they're all lies. So now White has the obligation to impeach Massino more generally. White knows about crimes, potentially, that Massino committed, that he didn't give up to the government when he cooperated. White could blow up Massino's cooperation, which he is. Is that a fact or is that speculation? No, no, that's speculation. I don't have that as a fact. But that's the problem here. That's what we talk about with these, with the cases. That's why White had to be disqualified. We don't know when he's using, and by the way, as Your Honor pointed out, Massino didn't waive his privilege. And as Your Honor pointed out, that was within the government's control, frankly. Whether Massino waived his privilege was in the government's control? Whether he did, yes, Your Honor. I'm not saying that the government had the right to tell. Whether he could have, whether he should have. The government had complete control over Massino because he was a cooperating witness. And for all practical purposes, he does what the government says. Otherwise, he's not giving substantial cooperation. Yes, and as this hearing reveals, Massino waived his privilege as to Flora Edwards, for whatever reason. Perhaps they weren't as concerned about having her in the case. Flora Edwards represented Massino the same time that White did. But the government said at this same hearing, she waived it as to Flora Edwards, but they don't waive it as to Massino. And they were waiting to hear from Ed McDonald about that. But it never is in the record that Massino ever waived his privilege, and he could have. And the government could have given an affidavit at any point as to what Massino's testimony would be. But, again, this is what the cases talk about. The problem is here, this is Kirshen, this is Cruz v. Lee and these other cases, the problem is, I'm sorry, the lawyer can't be in a position of having to consider whether to impeach his former client and how far to go. How much damage does he do? And if you play it the other way, if he makes Massino undercut Vitale on both of the murders, has he put Massino in a trick also with the government? Now the government wants to say, well, all he had to do was tell the truth, maybe. Judge Sullivan, when you were a prosecutor, I'm sure that was the case. Judge Corman, when you were a prosecutor? That was the golden age. I know that my time is up, but I appreciate your indulgence very much. Thank you both. We'll reserve decision.